MARY E. KIRBY, Respondent, v. ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **CARRIERS OF PASSENGERS: Alighting from Car: Duty of Carriers: Pleading: Unnecessary Allegations.** It is the duty of the carrier of a passenger to hold the train at a station a sufficient length of time to permit the passenger to alight, and where a breach of this duty is alleged in the petition and established by the evidence, the fact that the petition contained the further charge that, "the train started forward with a violent and sudden jerk, lurch and bound," does not require plaintiff to prove these allegations before she can recover. They are unnecessary to make a case.

2. ————: ————: ————: **Knowledge of Carrier.** Where a carrier failed in its duty to hold its train a sufficient length of time to permit a passenger to alight therefrom, it is wholly immaterial to a recovery, in case of injury to the passenger by reason of this breach of duty, whether or not the carrier's servants knew that the passenger was in the act of alighting from the train at the time it started.

3. **DAMAGES: Personal Injuries: Injury to Married Woman: Instructions.** In a suit for damages by a married woman for personal injuries received while alighting from a moving train, plaintiff was permitted to show that prior to the injury she was a boarding-house keeper and was able to perform household work. *Held*, that this was proper to show her condition before the injury; that it was not offered as a basis for recovery for loss of ability to perform household duties, and it is fur-

ther held that the instructions given in this case do not submit, as an element of damage, the loss of plaintiff's ability to perform houshold duties.

4. INSTRUCTIONS: Carriers of Passengers: Alighting from Train: Duty of Carrier: Damages. Instructions on the duty of the carrier to stop its train a reasonable time to permit passengers to alight and on the measure of damages in case of injury to a passenger caused by a breach of this duty, are examined and held to contain no error against the defendant.

5. DAMAGES: Personal Injuries: Elements of Damage. The elements which entered into the assessment of damages for personal injuries to plaintiff are the physical pain and suffering, and mental anguish caused by reason of the injury, and also such pain and suffering as the evidence would show that plaintiff was reasonably certain to suffer in the future, and if plaintiff was permanently injured in any way that fact should also be taken into consideration.

6. ———: ———: ———: Excessive Verdict. A verdict for $7500 on account of injury received by a woman while alighting from a moving train is held excessive on account of her failure to show that the injuries were permanent, and $4000 is held to be a reasonable compensation under the evidence.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) There were no facts proved from which defendant's negligence could be inferred, and the demurrer to the evidence should have been sustained. Guffey v. Railroad, 53 Mo. App. 468; Pryor v. Railroad, 85 Mo. App. 376; Shields v. Railroad, 87 Mo. App. 646; Saxton v. Railroad, 98 Mo. App. 503; Bond v. Railroad, 110 Mo. App. 131; Hecker v. Railroad, 110 Mo. App. 166; Bartley v. Railroad, 148 Mo. 140; Peck v. Transit Co.,

146 App.—20

178 Mo. 627; Neville v. Railroad, 158 Mo. 316; Wait v.
Railroad, 165 Mo. 622; Hedrick v. Railroad, 195 Mo.
123; Tinkle v. Railroad, 212 Mo. 465; Young v. Railroad,
84 S. W. 175; McGinn v. Railroad, 13 L. R. A. (N. S.)
601; 4 Elliott on Railroads, 2476; Nelson v. Railroad,
68 Mo. 593.   (2)   The great weight of the evidence is
to the effect that the plaintiff jumped from the train
while it was moving, and since the gravamen of plain-
tiff's case is the alleged negligent act of defendant in
jerking the train while she was alighting from it, she
is not entitled to recover.   There is a total failure of
proof of the allegations of the petition.   Where plain-
tiff specifies a particular act of negligence, she is con-
fined thereto, and cannot recover on some other ground
not specified.   Waldhier v. Railroad, 71 Mo. 514; Price
v. Railroad, 72 Mo. 414; McManamee v. Railroad, 135
Mo. 447; Groll v. Tower, 85 Mo. 249; Hamilton v. Rail-
road, 114 Mo. App. 509; Orcutt v. Building Co., 201
Mo. 443.   (3)   The verdict of the jury is so excessive
and so greatly against the weight of the evidence, as to
be the result of passion or prejudice, and it should not
be permitted to stand.   Wellman v. Railroad, 219 Mo.
155; Reynolds v. Transit Co., 189 Mo. 423; Wilbur
v. Railroad Co., 110 Mo. App. 698; Chlanda v. Transit
Co., 213 Mo. 263; Partello v. Railroad, 217 Mo. 659;
Ice Co. v. Tamm, 90 Mo. App. 203; Adams v. Railroad,
100 Mo. 569; DeCourcy v. Construction Co., 120 S. W.
632; Gordon v. Railroad, 121 S. W. 86; Gibney v. Tran-
sit Co., 204 Mo. 723; Chitty v. Railroad, 148 Mo. 82, 166
Mo. 435; Waddell v. Railroad, 213 Mo. 20; Brady v.
Railroad, 206 Mo. 540; Rittel v. Iron Co., 127 Mo. App.
36; Davidson v. Transit Co., 211 Mo. 362.   (5)   Plain-
tiff was a married woman, and both she and her hus-
band resided in the State of Arkansas at the time of the
alleged injury.   She, therefore, is not entitled to re-
cover for loss of her ability to perform her household
duties and services. Plummer v. Milan, 70 Mo. App. 602;
Wallis v. Westport, 82 Mo. App. 527; Cullar v. Railroad,

84 Mo. App. 346; Kroner v. Transit Co., 107 Mo. App. 46; Newell v. Transit Co., 108 Mo. App. 532; Becker v. Real Estate Co., 118 Mo. App. 83.

*H. E. Doerner, McKay & Corbett, Ward & Collins* for respondent.

(1) The force with which the train was started is not the gravamen of the charge. Nelson v. Railroad, 113 Mo. App. 707; Green v. Railroad, 122 Mo. App. 651; Ridenhour v. Railroad, 102 Mo. 285. (2) A railroad company is liable for damages occasioned by the injury to a passenger for failure to hold a train stationary until the passenger has had a reasonable time, within which to alight from said train. Strauss v. Railroad, 75 Mo. 190; Deeming v. Railroad, 80 Mo. App. 152; Cullar v. Railroad, 84 Mo. App. 344; Culbertson v. Railroad, 50 Mo. App. 556; Richman v. Railroad, 49 Mo. App. 106; Leslie v. Railroad, 88 Mo. 50; Gress v. Railroad, 109 Mo. App. 719; Nelson v. Railroad, 113 Mo. App. 708; Scamell v. Transit Co., 102 Mo. App. 202; Bell v. Railroad, 125 Mo. App. 665. (3) It was the duty of defendant's conductor, as a matter of course, to have known whether any of the passengers were preparing to alight, and not to have started the car while they were in the act of doing so. Huffer v. Railroad, 130 Mo. App. 643; Duffy v. Transit Co., 104 Mo. App. 241; Hurley v. Railroad, 120 Mo. App. 262; Bell v. Railroad, 125 Mo. App. 660. (4) This verdict is not excessive as measured by the rule wherein the question of injuries complained of have resulted in a serious injury to the limbs, as in the following cases. Bolton v. Railroad, 172 Mo. 105; Drain v. Railroad, 86 Mo. 574; Oglesby v. Railroad, 150 Mo. 161; Hollenbeck v. Railroad, 141 Mo. 97; Rodney v. Railroad, 127 Mo. 676; Griffith v. Railroad, 98 Mo. 175.

COX, J.—This is an action for personal injuries alleged to have been received by plaintiff while alight-

ing from defendant's passenger train at Steele, Missouri. Trial by jury, verdict for plaintiff for seventy-five hundred dollars, and defendant has appealed.

The evidence shows the home of plaintiff to be at Forest City, Arkansas; that she purchased a ticket and became a passenger over the defendant's road at Memphis, Tennessee, bound for Steele, Missouri, on November 4, 1905; that when the train arrived at Steele, Missouri, plaintiff was sitting near the rear end of the coach, and her testimony tends to show that when the station was announced and the train stopped she immediately arose and proceeded with ordinary care to the front end of the car that she might alight therefrom; that when she reached the door the passengers boarding the train at Steele were then coming in and interfered to some extent with her getting off the train; that when she got out on the platform and started to descend the steps the train started suddenly and threw her against the car and off onto the platform and injured her. That at the time the train started she did not see either the conductor or the brakeman, and the testimony of other witnesses introduced in her behalf tended to show that neither the conductor or brakeman were there at the time she attempted to alight and fell or was thrown off. That the train only stopped a very short time.

The testimony on the part of defendant tended to show that the train stopped its usual time at this station and that when the signal was given for the train to start there was nothing to indicate but that all the passengers wishing to alight at that station had alighted.

The errors assigned relate chiefly to the instructions of the court. The first contention of the defendant is that a demurrer to the testimony should have been sustained for the reason that the testimony of the plaintiff fails to support the allegations of the petition and insists that because plaintiff alleged in her petition that the train "started forward with a violent and sudden jerk, lurch and bound, and forward movement,

without the knowledge of or any warning whatever to plaintiff," that the plaintiff must prove those facts, and in addition thereto, that the sudden starting resulted from some negligence of the defendant before she can recover. Defendant insists that the allegation above quoted was the gravamen of the negligence charged against the defendant, and, hence, must be proven before plaintiff could recover; while respondent insists that the gravamen of the charge of negligence was the failure of defendant to hold the train a sufficient length of time before starting to give plaintiff a reasonable opportunity to alight from the train.

Upon this contention hangs the result in this case. The portion of the petition charging the negligence of defendant is as follows:

"That this plaintiff together with other passengers bound for said station of Steele, Missouri, were thereupon requested by defendant, through its agents and employees in charge of said train, to alight therefrom; and that the defendant, while said train was so stopped at said place, as aforesaid, and while the plaintiff, in the exercise of ordinary care and with no fault on her part, was attempting to, and in the act of alighting from said train and before she had fully left said train and before plaintiff had a reasonable time to alight safely from said train, the said defendant, by and through its agents, servants and employees in charge of and operating said train, and before said train had stopped for a sufficient length of time to enable the plaintiff, using due diligence, to alight therefrom in safety, negligently, carelessly and recklessly, while plaintiff was in the act of alighting from said train, which fact was known, or by the exercise of ordinary care could have been known, to the agents, servants and employees in charge of and operating said train, caused said cars and passenger train to be started forward with a violent and sudden jerk, lurch and bound, and forward movement, without the knowledge of or any warning whatever to this plain-

tiff, thereby causing plaintiff to be thrown, hurled and to fall with great force and violence from said car and train to the gravel and cinder platform at said station; and by reason of the sudden and violent jerking and forward movement of said train plaintiff was struck with great force on her head and body by said moving car and train."

As stated before, the contention of defendant is that the proof on the part of plaintiff failed to make out a case under this allegation in the petition. The first question necessary to be determined is what was the ground of negligence charged against the defendant. It seems to us that a fair interpretation of this charge fixes the gravamen of the charge as the failure to hold the train a sufficient length of time to permit plaintiff to alight therefrom. It clearly does make this charge and this was all that was necessary for plaintiff to charge and prove in order to make a prima-facie case against defendant. [Hurt v. Railroad, 94 Mo. 255, 262, 7 S. W. 1; Straus v. Railroad, 75 Mo. 185; Fillingham v. Transit Co., 102 Mo. App. 573, 582, 77 S. W. 314; Shareman v. Transit Co., 103 Mo. App. 515, 525, 78 S. W. 846.]

The other allegations of the petition charging that the train was caused to move forward with a violent and sudden jerk, lurch and bound were unnecessary allegations, and we can see no reason why plaintiff, by reason of having made these allegations when they were entirely unnecessary, should be required to prove them before making a case sufficient to go to the jury when to prove the other allegation was of itself sufficient. [Nelson v. Railroad, 113 Mo. App. 702, 88 S. W. 781; Green v. Railroad, 122 Mo. App. 647, 99 S. W. 28.] The demurrer to the testimony was properly refused.

Contention is made by appellant that error was committed in instruction number one given on behalf of plaintiff for two reasons. First: It does not submit to the jury the question

as to whether or not defendant held the train a reasonable length of time to permit plaintiff to alight. Second: That it failed to submit to the jury the question that the servants of the defendant knew, or by the exercise of ordinary care might have known that the plaintiff was attempting to alight from the train at the time the train moved forward.

The instruction complained of, after having defined the defendant's duty in carrying plaintiff from Memphis, Tennessee, to Steele, Missouri, then proceeds as follows:

"And if you further find and believe from the evidence that when the said passenger train arrived at the defendant's station in said town of Steele, said train was brought to a stop, and plaintiff was requested by defendant's agents, servants and employees in charge of said train to alight therefrom; and that while said train was so stopped, the plaintiff, in the exercise of ordinary care and with no fault or negligence on her part, and at the request of the agents and servants of the defendant in charge of said train, attempted to alight therefrom, and before the plaintiff had a reasonable and sufficient time to alight from said train in safety, but while she was attempting to and in the act of alighting from said train, the agents, servants and employees of the defendant in charge of and operating said train, negligently, carelessly and recklessly, without giving plaintiff a reasonably sufficient length of time to alight from said train in safety, caused said passenger train to be started forward, with a violent and sudden lurch, jerk or bound, or forward movement, striking this plaintiff and throwing her with force and violence from said train and injuring plaintiff; that said injury to plaintiff was directly caused by the carelessness, negligence and recklessness of the agents, servants and employees of the defendant in charge of said train, and without fault or negligence on the part of the plaintiff contributing thereto, then your verdict will be for

the plaintiff in whatever sum you may believe from the evidence she is damaged by reason of said injury, not to exceed fifteen thousand dollars."

The reading of this instruction is a sufficient answer to the first objection made against it for it did in express terms require the jury to find that defendant started the train without having given plaintiff a reasonable time to alight therefrom.

There was no instruction which authorized a recovery without the jury finding that the defendant did not stop the train a sufficient length of time to permit plaintiff to alight therefrom, and, hence, the second objection made to this instruction that it did not submit to the jury the question of the knowledge of defendant's servants of the fact that plaintiff was alighting from the train when it started was not well taken, for the submission of that issue was entirely unnecessary. It was the duty of the defendant to hold the train a sufficient length of time to give the plaintiff a reasonable opportunity to alight therefrom and if they failed in this duty then it was wholly immaterial whether or not defendant's servants knew that plaintiff was in the act of alighting from the train at the time it started.

From what has been said in disposing of the demurrer to the testimony, it follows that this instruction given for the plaintiff was more favorable to the defendant than the facts warranted. It required plaintiff to prove more than she was required to prove in order to make out a case, and there was no error in this instruction against the defendant.

It is contended that instruction number two in behalf of plaintiff on the measure of damages is erroneous. This instruction is as follows:

"In estimating the plaintiff's damages, if the jury find for her, they will take into consideration not only the physical injury inflicted, the bodily pain and mental anguish endured and suffered, but may also allow for such damages as appear from the evidence will reason-

ably result to her from said injuries in the future, not to exceed in all the sum of fifteen thousand dollars."

The objection to this instruction is that the plaintiff was a married woman and, therefore, not entitled to recover for loss of ability to perform household duties and services. It will be noticed that the instruction complained of does not mention that as an element of damage. Further, there was no evidence in the case of the value of plaintiff's services, or the amount of loss in that respect by reason of her injury. There was evidence tending to show that prior to her injury she was keeping boarding house and was able to perform household work. That testimony was competent as bearing on the question of her condition before the injury and the extent and permanency of the injury which she received, and was not offered for the purpose of fixing a basis for the recovery for loss of ability to perform services, and no instructions were asked by plaintiff, nor given by the court upon that question, and none were asked by the defendant; and as the testimony above mentioned was competent on the question of plaintiff's injury, and defendant, having asked no instruction limiting it to that one purpose and none having been given on the part of plaintiff extending beyond that purpose, no error was committed in that respect.

Defendant asked the court to instruct the jury that if the train started while plaintiff was on the steps of the car and in the act of alighting, and that in starting, it moved slowly and did not start with a sudden and unusual jerk and she was caused to fall by reason of the slow starting of the train only, then she could not recover. The court refused this instruction and gave one of its own motion, telling the jury that if the train had stopped a reasonable length of time for plaintiff to alight and it then started and moved slowly and did not start with a sudden and unusual jerk and by the slow starting of the train she was caused to fall, she could not recover. The instruc-

tion asked by the defendant was wrong for the reason that it ignored the question of the train having been held a reasonable length of time to permit plaintiff to alight before it started, and the court was right in changing the instruction so that it would cover that question.

It is finally contended by defendant that the damages assessed in this case are excessive. The evidence relating to that question consisted almost entirely of the testimony of plaintiff herself. The injury occurred on the 4th day of November, 1905; trial was had the first of August, 1906; plaintiff testified that there was an injury to her back, knee and ankle; that the fall had caused a displacement and falling of the womb; that she was forty-three years of age; that at the time of the trial the ankle had not fully recovered—she was still somewhat lame upon it; that it was weak, and that if she stepped upon anything that would cause it to careen it would cause pain and some swelling; that she was confined to her bed for two months after the injury and that some time after the injury there was a discharge from the womb of blood and pus and that she was operated upon several times for this difficulty, and that there was at the time of the trial still some inflammation of the womb though it had improved very much since the injury; that it was still misplaced and she was required to wear a support to hold it in place; that she was nervous and still had pains in the back of her head and the small of her back, but she did not—and in the nature of things could not—testify that this injury was permanent. She did not call any physician to testify in relation to her injuries or to show the probability of their permanency. The physician who she says operated upon her at Forest City, Arkansas, nor any other physician testified in her behalf. The defendant placed Dr. Grainger upon the stand, the doctor who attended the plaintiff at Steele, Missouri, after the injury, and he testified that the injury to the ankle might be permanent,

but that it would probably improve as time advanced. As to the womb trouble he did not have sufficient information to give an opinion. This, in substance, was all the testimony relating to the character and extent of plaintiff's injuries. The elements which should enter into the assessment of plaintiff's damages were the physical pain and suffering and mental anguish caused by reason of the injury and also such pain and suffering as the evidence would show she was reasonably certain to suffer in the future, and if she were permanently injured in any way, that fact should also be taken into consideration.

If the evidence showed with reasonable certainty that as a result of this fall plaintiff received a permanent injury to her nervous system or to her womb resulting in nervousness, a suffering which would be permanent and extend for the period of her natural life, we would be disposed to say that the verdict was not excessive, but the only permanent injury which the jury were warranted in finding under the testimony was the injury to the ankle, and while that was shown to be somewhat serious, yet it is reasonably certain from this testimony that its condition will be very much improved, and while at the time of the trial the other injuries had not completely healed, the evidence did not show that they were permanent. The injury to the womb and to the nervous system were injuries that were not susceptible of ocular demonstration or direct proof by a non-expert witness, and the only way the jury could have been informed as to whether or not they were reasonably certain to be permanent would have been by expert testimony, and plaintiff having testified that some physician at Forest City, Arkansas, had performed several operations upon her and treated her extensively for that ailment, if she wished the jury to consider that as a permanent injury it would seem to us but fair and reasonable that she should have either produced the testimony of that physician or of some other one capable

of testifying as to that question, and not left it, as she did in the trial, to a mere matter of speculation by the jury. The size of the verdict in this case indicates that the jury must have considered the injuries to the womb and nervous system of plaintiff as permanent. The evidence, having failed to show this fact, our conclusion is that the amount of damages assessed in this case was more than the evidence warranted.

The evidence, however, does show a severe injury and a great deal of suffering and a permanent injury to the ankle of plaintiff of a more or less serious nature, and this testimony will entitle the plaintiff to a substantial verdict, but, in our judgment, a verdict of four thousand dollars would be ample to compensate the plaintiff for the injuries shown by the testimony to have been received by her.

Finding no error in the trial of this case except in the amount of the verdict, the judgment will be affirmed upon condition that plaintiff, within ten days, remit the sum of thirty-five hundred dollars, permitting the judgment to stand for four thousand dollars, but on failure to enter this remittitur, the judgment will be reversed and the cause remanded. All concur.